UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEBRA HUTCHISON,

        Plaintiff,

  v.                             Civil Action 2:17-cv-1140
                                Judge Michael H. Watson
                                Magistrate Judge Jolson

COMMISIONER OF
SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Debra L. Hutchison, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her Supplemental Security Income and Disability Insurance Benefits. For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case pursuant to sentence four of 42 U.S.C. § 405(g).

I.      BACKGROUND

Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") in September 2013, alleging disability due to a number of physical impairments. (Tr. 111, PAGEID #: 164). Plaintiff alleged an onset date of August 21, 2013. (*Id.*).

After initial administrative denials of Plaintiff's claims, Administrative Law Judge Deborah E. Ellis ("the ALJ") heard the case on March 1, 2016. (*Id.*). On July 13, 2016, the ALJ issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 108–20, PAGEID #: 161–73). Plaintiff requested a review of the Hearing Decision on

July 15, 2016. (Tr. 201, PAGEID #: 235). The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–3, PAGEID #: 53–55).

Plaintiff filed this case on December 26, 2017, and the Commissioner filed the administrative record on March 5, 2018. (Doc. 9). Plaintiff filed a Statement of Specific Errors on April 18, 2019 (Doc. 10), the Commissioner responded on May 31, 2018 (Doc. 11), and Plaintiff replied on June 15, 2018 (Doc. 12).

### A. Personal Background

Plaintiff was born in April 1962 (Tr. 27, PAGEID #: 79), and was 51 years old on her alleged onset date. (Tr. 25, PAGEID #: 77). She has a high school education and work experience as a certified nurse aide ("CNA"), a cashier, a material handler, and a bartender. (Tr. 28–30, 51–54, PAGEID #: 80–82, 103–06). She also worked as a vending machine coin collector. (Tr. 30, 53, PAGEID #: 82, 105). As a nurse aide, Plaintiff lifted individuals who weighed up to 400 pounds. (Tr. 28, PAGEID #: 80).

### B. Relevant Hearing Testimony

Plaintiff testified that she injured her back on February 2013, and has not worked since that time. (Tr. 30–31, PAGEID #: 82–83). Plaintiff suffers from pain in her back, down her left leg, and into her groin. (Tr. 43, PAGEID #: 95). She stated that she has trouble walking, falls often, and has trouble lifting things. (Tr. 31–32, PAGEID #: 83–84). Plaintiff can, for example, lift a gallon of milk but cannot lift a container of laundry detergent over twelve pounds. (Tr. 31, PAGEID #: 83). Plaintiff also has a heart condition, which required two stents and causes palpitation. (Tr. 35, PAGEID #: 87). Although her heart condition makes her tired, she is not a candidate for surgery. (Tr. 35–36, PAGEID #: 87–88).

Plaintiff has been treated by a chiropractor and has a TENS unit but she is unable to use it due to pain. (Tr. 32–33, PAGEID #: 84–85). She has received pain injections, which last three or four weeks, and an SI joint injection, which lasts two or three days. (Tr. 33, PAGEID #: 85). Plaintiff has tried physical therapy, but it causes her too much pain. (*Id*.). For daily pain relief, she uses hot and cold compresses and soaks in the tub. (Tr. 33–34, PAGEID #: 85–86).

Plaintiff testified that she sleeps a lot, and her daughter helps her during the day. (Tr. 34, PAGEID #: 86). She has gained fifty-five pounds due to inactivity and breathes with the assistance of an oxygen tank due to COPD. (*Id*.). Plaintiff also explained that her pain impacts her moods, making her "grumpy" and adversely impacting her ability to get along with others. (Tr. 34–35, PAGEID #: 86–87).

Plaintiff sits most of the time and drives once or twice each week to the pharmacy or doctor. (Tr. 38–39, PAGEID #: 90–91). Plaintiff lives with her daughter and son-in-law and does not clean or do dishes. (Tr. 40–41, PAGEID #: 92–93). She does, however, make her bed and let the dogs outside. (Tr. 41–42, PAGEID #: 93–94). Plaintiff's daughter takes her grocery shopping. (Tr. 42, PAGEID #: 94). In terms of hobbies, Plaintiff watches television, sews, and crochets. (*Id*.). Plaintiff and her daughter go out to eat approximately once a week. (Tr. 45, PAGEID #: 97).

Plaintiff is on blood pressure medication, pain medication, and an anti-depressant. (Tr. 43–44, PAGEID #: 95–96). She also uses a nebulizer when she isn't using the oxygen. (Tr. 44–45, PAGEID #: 96–97). Plaintiff smokes cigarettes but testified that she is quitting. (Tr. 45, PAGEID #: 97).

Plaintiff stated that she is unable to work primarily due to her inability to lift, which hurts the left side of her body and her back. (Tr. 47–48, PAGEID #: 99–100). Plaintiff stated that she

3

has tried working in an office in a position that did not require lifting, but it was difficult for her to sit for the required length of time. (Tr. 48, PAGEID #: 100). Plaintiff explained that she needed to get up and walk around every twenty minutes due to pain and added that she cannot stand for more than twenty-five minutes. (Tr. 48–49, PAGEID #: 100–01).

Vocational Expert George Brian Paprocki (the "VE") also testified at the hearing. (Tr. 50, PAGEID #: 102). In discussing Plaintiff's work history, the VE stated:

> The first job I have down is home health aide. The claimant indicated she had training as a CNA and I'm wondering whether the job that she was doing—she had a couple of different positions, I believe, as home health aide. Whether that job was a CNA job or what—that was home health aide. One job that's in the DOT is someone that would basically clean the patient's house and also do personal things for them, help them wash their hair or something of that nature. I'm wondering which of the—which of these jobs she was actually doing, a full CNA job where she was providing some kind of medical component to the job or whether she was just kind of, more or less, a companion.

(Tr. 51, PAGEID #: 103). In response, Plaintiff explained that she gave "hands-on personal care" in people's homes, which entailed bathing patients, moving them, and running some of their errands. (*Id.*). At times, Plaintiff also cleaned their homes. (Tr. 51–52, PAGEID #: 103–04).

Based upon Plaintiff's description, the VE classified the job as a Certified Nursing Assistant ("CNA"), with a Specific Vocational Preparation ("SVP") level of 4. (Tr. 52, PAGEID #: 104). The VE also classified Plaintiff's past work as a cashier, vending machine coin collector, a bartender, and material handler. (Tr. 28–30, PAGEID #: 80–82). When asked by the ALJ whether any skills might transfer from Plaintiff's semi-skilled positions, the VE answered yes. (Tr. 54, PAGEID #: 106). He explained:

> I'd say that skills that might transfer would include verbal communication, effective verbal communication. We're talking about knowledge of medical terminology, of basic recordkeeping. She had to keep records as a CNA. And I think that those might transfer.

(*Id.*).

The ALJ and VE then had the following exchange concerning whether a hypothetical individual with claimant's age, education, and past work could perform Plaintiff's past work:

> Q. Okay. All right then. Assume a hypothetical individual, if you would then of this claimant's age, education and past work. Assume for purposes of the first hypothetical, that she can lift and carry 10 pounds frequently and 20 pounds occasionally, push and pull the same, that she can sit for a total of six hours in an eight-hour day, she can stand and/or walk for a total of six hours in an eight-hour day. However, every 30 minutes, she would have to or be allowed to—it would be necessary for her to, let me put it that way, every 30 minutes to stand and stress—stretch, walk a little bit around the work station. However, the productivity levels would remain adequate.
>
> A. So, in other words, you're saying that she would be doing something useful to the job when she was taking a—
>
> Q. When she's up.
>
> A. —break and walking around?
>
> Q. Right. And I don't envision the type of job where, necessarily, she would be walking, you know, 100 or 200 yards away. It could just be kind of stretching out, you know, at the desk. Excuse me. Okay. All right. In addition to that, let's see, only occasional climbing of ramps and stairs. She should never be climbing ladders or scaffolding. Frequent balance, frequent stooping, occasional on the crawling, crouching. She should avoid concentrated exposure to humidity, to wetness, to extreme heat, to extreme cold and to dust, odors, fumes and pulmonary irritants. All right. Able to do any past work based on that?

(Tr. 54–55, PAGEID #: 106–07). The VE answered that the hypothetical individual could not do any of Plaintiff's past work based on those limitations because her former light work as a bartender would not permit "being able to take a break and walk away from the job" while maintaining productivity. (Tr. 55, PAGEID #: 107).

The ALJ next asked the VE to identify other work based on Plaintiff's "transferable skills." (*Id.*). In response, the VE stated that a hypothetical individual with Plaintiff's transferable skills could work as a medical records clerk (800 jobs regionally and 21,500 nationally), a unit clerk who "would keep the medical record of people who [are] inpatients on the floor" (2,500 jobs

regionally and 37,000 nationally), and a companion (1,100 jobs regionally and 61,000 nationally), which he described as similar to the "CNA job, but … dealing with ambulatory people." (Tr. 55–56, PAGEID #: 108–09).

> Plaintiff's counsel questioned the VE concerning Plaintiff's CNA position:
>
> Q. So I want to start by talking about the job that you ultimately described as a CNA job. It's my understanding that the way that the claimant performed that job actually involved components both of the home health aide and the CNA. Would you agree?
>
> A. It's very much the same job except the CNA is one step higher in terms of the specific vocational training, but yeah, they're pretty much the same.

(Tr. 56–57, PAGEID #: 107–08). The VE explained that, in these jobs, the hypothetical individual would need to be 90% effective. (Tr. 56, PAGEID #: 108). That is, an employer would not tolerate the hypothetical individual being off task more than 10% of the time. (*Id*.). The VE's source for the number of available jobs was a computer program called SkillTRAN. (Tr. 59, PAGEID #: 111).

Plaintiff's counsel also questioned the VE concerning the scope of the hypothetical individual's work in the identified positions, leading to the following exchange:

> Q. Sir, you had indicated in response to the judge's first hypothetical that the claimant wouldn't be able to perform the past relevant work because of the requirement that she be productive during periods of standing up and moving around?
>
> A. Yes.
>
> Q. What would the medical records clerk, what would they be doing as a productive measure during periods of standing up and moving around?
>
> A. Putting files back, you know, getting different things that they need to complete the job.
>
> Q. Such as?
>
> A. Getting paper for the copier. I don't know.

Q. Okay. What about—

A. It's a job—

Q. —the unit clerk job as well?

A. It's a light job which means that the majority of it is actually—when this DOT was written some years ago, it was primarily standing. It probably is at least half and half standing, sitting. Now which job? The—which job are you looking at? The unit clerk?

Q. The unit clerk.

A. The unit clerk would be more sitting, I would say, than standing.

Q. Well, but what is—

A. Which, you're—

Q. —she going to be doing that's going to be productive while she's up moving around in the work station?

ALJ: Can I clarify? Because I may have muddied the waters here. The hypothetical that I gave him was that, if necessary, she could stand every 30 minutes as long as the productivity levels didn't drop below what was acceptable. The he said oh, well then she would be doing something productive and I said yes or standing up and stretching at her desk. It wouldn't involve, necessarily, walking. In other words, I put the question in terms of how off task she would be as a result of having to stand every thirty minutes. So if I can just put that in context. You can ask him whatever you want to as far as the hypothetical is concerned, but my hypothetical was stand every 30 minutes if necessary without productivity dropping below what he subsequently said was the 10% off task.

ATTY: Okay. When I took notes, I had written something about walking around the work station. So we're taking that out.

ALJ: No. When I say walking around the work station, this is my work station where I'm sitting right now, okay? That's what I meant. So this is my work station and I have been sitting here since 8:15 this morning, so I would like very much to get up, do this, walk over here and come back over and sit back down again. That's my hypothetical.

ATTY: Okay. Thank you for clarifying, your Honor. I don't have any other questions.

(Tr. 60–62, PAGEID #: 112–14).

### C. Post-Hearing Brief

On March 17, 2016, Plaintiff submitted a post-hearing brief to the ALJ. (Tr. 358, PAGEID #: 414). Plaintiff argued, *inter alia*, that her "past work was nowhere described in the record as involving skills." In making this argument, Plaintiff relied on Social Security Ruling ("SSR") 82-41, which explains a skill as follows:

> A skill is knowledge of a work activity which requires the exercise of *significant judgment that goes beyond the carrying out of simple job duties* and is acquired through performance of an occupation which is above the unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82-41(2)(a) (emphasis added).

Plaintiff likewise relied on that Ruling's use of a nurse aide position as an example. (*Id.* (citing SSR 82-41(2)(d)). Indeed, Plaintiff maintained the following paragraph "describes [Plaintiff's] job perfectly":

> [A]t a higher level of semiskilled work, are jobs like that of a nurse aide, who may also serve food to people. A nurse aide ordinarily performs other tasks which do not provide a special advantage over unskilled workers, such as dusting and cleaning rooms, changing bed linens, and bathing, dressing and undressing patients. The only duties which suggest transferable skills are those related to "nurse" rather than "aide"—taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output. However, these occasional or incidental parts of the overall nurse aide job, which are a small part of a higher skilled job (nurse), would not ordinarily give a meaningful vocational advantage over unskilled.

(*Id.*). Thus, Plaintiff argued that "Social Security's own regulations hold that the job of home health nurse aide does not have transferable skills." (*Id.*).

8

**D. The ALJ's Decision**

The ALJ found that Plaintiff remained insured for disability insurance benefits through December 31, 2018, and that she had not engaged in substantial gainful activity since her alleged onset date of August 21, 2013. (Tr. 113, PAGEID #: 166). The ALJ determined that Plaintiff suffered from the following severe impairments: sleep apnea, peripheral vascular disease, COPD, degenerative disc disease, and hypertension. (*Id.*). Additionally, the ALJ determined that Plaintiff suffered from non-severe impairments, including skin cancer, hyperlipidemia, and GERD. (Tr. 114, PAGEID #: 167). However, the ALJ found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (*Id.*).

Upon consideration of the record, the ALJ determined that Plaintiff retained the following residual functional capacity ("RFC") to:

> perform light work … except she can occasionally climb ramps or stairs, can never climb ladders, ropes, or scaffolds, can frequently balance and stoop, can occasionally kneel, crouch, and crawl, and must avoid concentrated exposure to humidity and wetness, dusts, odors, fumes, and pulmonary irritants, extreme cold, and extreme heat. The claimant also must be allowed to stand every 30 minutes, if necessary, but in a way that does not affect productivity.

(Tr. 114–15, PAGEID #: 167–68).

Although the ALJ determined that Plaintiff was unable to perform past relevant work, she found that Plaintiff had acquired work skills from her past relevant work. (Tr. 118, PAGEID #: 171). The ALJ stated the following concerning those work skills:

> The [VE] testified that the claimant's past relevant work as [a] certified nurse[ ] aide was semi-skilled with a specific vocational preparation (SVP) code of 4 and required the following skills: verbal communication, medical terminology knowledge, and basic record keeping.
>
> In a post-hearing brief, the claimant's representative argues that the claimant acquired no work skills from her nurse's aide position and states that SSR 82-41 even describes a certified nurse aide as having no transferable skills (19E). At the

9

outset, the undersigned notes that the representative did not object to these findings at the hearing, and thus her argument is not timely.

In any event, SSR 82-41 does state that the "only duties which suggest transferable skills are those related to 'nurse' rather than 'aide'—taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output. Moreover, the SSR also states these "occasional or incidental parts of the overall nurse aide job, which are a small part of a higher skilled job (nurse), would not ordinarily give a meaningful vocational advantage over unskilled."

However, SSR 82-41 does not provide a conclusive statement that the position of a certified nurse aide provides claimant with no transferable skills. In fact, SSR 82-41 states 'The extent of such duties, however, may vary with individual nurse aides." And, in this case, the claimant herself has indicated that she performed personal care for patients and also completed reports as part of her work. (4E/8 Hearing Testimony). As a result, a determination of skills was properly made based upon the claimant's testimony, her description of prior work (*see, e.g.*, 4E), and the testimony of the vocational expert. The undersigned overrules this objection.

(Tr. 118–19, PAGEID #: 171–72). Thus, the ALJ determined that considering Plaintiff's age, education, work experience, and RFC, Plaintiff had acquired work skills transferable to other occupations with jobs existing in significant numbers in the national economy, such as a medical record clerk, a unit clerk, and a companion. (Tr. 119, PAGEID #: 172). Based on this finding, the ALJ found that Plaintiff has not been under a disability, as defined in the Social Security Act, from August 21, 2013, through the date of the decision. (Tr. 120, PAGEID #: 173).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also

be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

### III. DISCUSSION

Plaintiff raises three errors. (Doc. 10). First, Plaintiff argues that "[t]he ALJ's determination that [she] acquired transferable skills from her work as [a] nurse aide is contrary to Social Security's own SSR 82-41 and is not supported by substantial evidence." (*Id*. at 1). Second, Plaintiff asserts that the ALJ erred by relying on vocational testimony derived from a computer program, rather than from the witness's expertise. (*Id.*). Third, and finally, Plaintiff contends that the ALJ erred by posing a hypothetical to the VE that was "convoluted and confusing." (*Id.*).

#### A. Plaintiff's Transferable Skills

Relying on SSR 82-41, Plaintiff argues that the ALJ erred in finding that she had acquired the work skills of effective verbal communication, knowledge of medical terminology, and basic recordkeeping arising from her position as a nurse aide that were transferable to other occupations with jobs existing in significant numbers in the national economy. (*Id*. at 7–14).

An ALJ is charged with the ultimate determination as to Plaintiff's skill level. *See* SSR 82-41(6). In making such a determination, the ALJ must conduct a transferable skills analysis that includes paying close attention to "the actual complexities of the job." SSR 82-41(2)(d); *see also Barr v. Berryhill*, No. 2:16-cv-42, 2017 WL 2803176, at *10 (N.D. W. Va. June 13, 2017). As SSR 82-41(3) explains, the claimant is in the best position to provide information regarding how past jobs were performed. In any case, record evidence must support an ALJ's finding that the specific skills are transferable. *Barr*, 2017 WL 2803176, at *12. If such evidence is lacking, then

remand is warranted. *Id*. at *12–13 (recommending remand where no evidence supported the ALJ's finding that the plaintiff had acquired specific skills), *adopted by* 2017 WL 2803168 (N.D. W. Va. June 28, 2017); *see also Hirsch v. Colvin*, No. CIV-14-1289-STE, 2016 WL 538489, at *3–4 (W.D. Okla. Feb. 9, 2016) (remanding due to insufficient evidence demonstrating that the plaintiff "could actually perform the skills identified by the VE" in her past positions of nurse aide and home health aide).

In this case, the ALJ relied upon the VE's testimony that Plaintiff's work as a nurse aide required the skills of effective verbal communication, knowledge of medical terminology, and basic recordkeeping. (Tr. 118, PAGEID #: 171). The ALJ likewise considered Plaintiff's post-hearing brief in which she argued that, consistent with the example in SSR 82-41(2)(d), she acquired no transferable skills as a nurse aide. (*Id*.). The ALJ found as an initial matter that, because Plaintiff's counsel failed "to object to these findings at the hearing," the argument was "untimely." (*Id*.).

In her brief in opposition, Defendant goes one step further, asserting that "Plaintiff has waived her right to bring up the issue of skills transferability because she failed to ask the VE about this topic at the time of the hearing." (Doc. 11 at 8). According to Defendant, allowing Plaintiff to raise this argument in this Court:

> would effectively give Plaintiff and all future claimants a second bite at the apple. It would send a signal to all future litigants that if they feel an essential vocational fact was unclear or not accurate, including the job skills the [VE] specifically identified as transferable, rather than ask additional questions to the VE to resolve or clarify the issue, the more strategic decision would be to stay silent, and challenge the topic if the ALJ's decision is not to their liking.

(*Id*. at 8–9 (citing *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) (stating that "claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that

12

conflict as a reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing")")).

This Court disagrees. "Social security proceedings—unlike judicial ones—are inquisitorial, not adversarial." *Chester v. Comm'r of Soc. Sec.*, No. 11-15353, 2013 WL 1122571, at *8 (E.D. Mich. Feb. 25, 2013) (citing *Sims v. Apfel,* 530 U.S. 103, 110–11, 120 S. Ct. 2080, 147 L.Ed.2d 80 (2000)). The Court is aware of no binding authority that requires it to deem Plaintiff's argument waived based on counsel's failure to address it specifically at the hearing. Hence, the Court will follow the ALJ's lead and address this issue on the merits.

Here, there is insufficient evidence to demonstrate that Plaintiff could perform the skills identified as transferable by the VE. As Defendant concedes, "the VE testified that he was initially unable to determine from [Plaintiff's] forms whether [her] past work was that of a home health aide, or as a certified nurse assistant (CNA)." (Doc. 11 at 5–6 (citing Tr. 51, PAGEID #: 103)). Plaintiff explained to the VE that she gave "hands-on personal care" in people's homes, which entailed bathing them, moving them, and running some of their errands. (Tr. 51, PAGEID #: 103). Plaintiff also stated that, at times, she cleaned their homes. (Tr. 51–52, PAGEID #: 103–04). Somehow from this testimony, the VE leapt to the conclusion that Plaintiff possessed the skills of effective verbal communication, knowledge of medical terminology, and basic recordkeeping. (*See* Tr. 54, PAGEID #: 106).

In addition to the VE's finding and Plaintiff's testimony, the ALJ relied on Plaintiff's "description of her prior work" in the record to find that she possessed transferable skills. (Tr. 119, PAGEID #: 172 (citing Ex. 4E)). This evidence consisted of a work history report (Tr. 284–92, PAGEID #: 340–48), in which she described her first "in home health care" position as consisting of cleaning, helping with personal care baths, lifting and transferring patients (moving

13

and positioning patients), and lifting groceries. (Tr. 290, PAGEID #: 346). Although not entirely clear, Plaintiff may have checked a box indicating that she wrote or completed reports. (*Id.*). Immediately following that section, Plaintiff was asked to identify how many hours of each day she wrote or typed. (*Id.*). She responded "N/A." (*Id.*). Plaintiff described her second "in home health care" position as requiring personal care for people including dressing, bathing, lifting, transferring (from chair to chair, chair to bed, chair to toilet, or wheelchair to bed or shower) and house cleaning. (Tr. 291, PAGEID #: 347). Plaintiff checked a box indicating that she did some writing or completing reports. (*Id.*). Again, however, Plaintiff responded "NA" to the total hours each day that she wrote or typed. (*Id.*). Elsewhere in the record, Plaintiff described her work as involving personal care transfers, some house cleaning, and errands. (Tr. 342, PAGEID #: 398).

Based upon this evidence, Plaintiff's work mirrored the example in SSR 82-41(2)(d), which indicates that, "absent extraordinary circumstances," a nurse aide position "would *not* provide a meaningful vocational advantage over unskilled work" and thus does not give rise to "transferable skills." *Barr*, 2017 WL 2803176, at *12 (emphasis in original). As SSR 82-41(2)(d) provides, "the only duties which suggest transferable skills are those related to "nurse" rather than "aide"—taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output." Even if Plaintiff wrote or completed reports, which is suggested only by the check-box form, there is no indication that the reports were the result of performing nurse-like duties, such as "taking and recording the rates of temperature, pulse and respiration; and recording food and liquid intake and output." SSR 82-41(2)(d). Nowhere does the record suggest that Plaintiff engaged in those duties.

Without any evidence concerning the substance and frequency of the reports, the check-box form alone is a mere scintilla of evidence insufficient to support a conclusion that the ALJ's

14

decision is supported by substantial evidence. *See Rogers*, 486 F.3d at 241. Put plainly, "the check-box forms are not sufficiently detailed to constitute evidence regarding transferable skills." *Hirsch*, 2016 WL 538489, at *4 (citing *Ogle v. Barnhart*, 123 F. App'x 361, 363 (10th Cir. 2005) ("[S]keleton description[s] of [plaintiff's] past jobs are insufficient to document [her] acquisition of skills.") (citation and internal quotation marks omitted); *Rice v. Colvin*, No. CIV-12-1-5-SPS, 2013 WL 1286186, at *4 (10th Cir. Mar. 26, 2013) (noting that checking "yes" on the form which inquired about use of equipment or preparing reports was "clearly insufficient to document [plaintiff's] acquisition of skills") (citation and internal quotation marks omitted)).

Because the record is devoid of sufficient evidence to demonstrate that Plaintiff has acquired the transferable skills, the ALJ erred in relying on the VE's testimony at step five. Consequently, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case for further consideration of this issue.

### B. Remaining Assignments of Error

The Court's decision to recommend reversal and remand on the first assignment of error alleviates the need for analysis on Plaintiff's second and third assignments of error. Nevertheless, if the recommendation is adopted, the ALJ may consider Plaintiff's remaining assignments of error on remand if appropriate.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's nondisability finding and **REMAND** this case for further consideration of whether Plaintiff has acquired transferable skills.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: July 12, 2018
/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE